UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northwest Territory Limited Partnership,

      Plaintiff,

v.                                                      Civ. No. 04-4531 (JNE/SRN)
                                                     ORDER

OMNI Properties, Inc., a/k/a Omni Apartment
Communities, Inc., and Greg Gulley,

      Defendants.

---

Robin A. Williams, Esq., Bassford Remele, P.A., appeared for Plaintiff Northwest Territory Limited Partnership.

Scott T. Anderson, Esq., Ratwik, Roszak & Maloney, P.A., appeared for Defendants OMNI Properties, Inc., a/k/a Omni Apartment Communities, Inc., and Greg Gulley.

---

Northwest Territory Limited Partnership (Northwest Territory) brought this case against OMNI Properties, Inc., a/k/a Omni Apartment Communities, Inc., (OMNI) and Greg Gulley (collectively, Defendants) for breach of contract, breach of fiduciary duty, and negligence. The case is before the Court on Defendants' motion to dismiss or, in the alternative, to transfer venue.[1] For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## I. BACKGROUND

Northwest Territory is a Minnesota limited partnership. Its general partner is Northwest Territory Corporation, a Minnesota corporation with its principal place of business in Minnesota.

---

[1] At the hearing, the Court expressed concern that Northwest Territory had not properly alleged subject matter jurisdiction because it did not allege the citizenship of each general and limited partner. *See Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). Northwest Territory has submitted supplemental affidavits demonstrating diversity. The Court will treat the Complaint as amended. *See id*.

1

Northwest Territory's president and sole limited partner is Andrew Grossman, a Minnesota resident.[2] Nick Forrette, a Colorado resident, is an agent for Northwest Territory. Northwest Territory owns Springbrook Apartments in Oklahoma (the Property).

OMNI is a Colorado corporation with its principal place of business in Colorado. It is engaged in the business of managing apartment communities. Gulley, a Colorado resident, is the owner and president of OMNI. On April 26, 2000, the parties executed a Management Agreement (Management Agreement), which provided that OMNI would manage the Property.

Northwest Territory asserts claims of breach of contract, breach of fiduciary duty, and negligence, arising from Defendants' alleged mismanagement of the Property. Defendants now move to dismiss or, in the alternative, to transfer venue.

## II.   DISCUSSION

Defendants raise two arguments in support of their motion to dismiss. First, Defendants assert that the Court lacks personal jurisdiction over them. Second, Defendants contend that venue is improper. In the alternative, Defendants move to transfer the action to the United States District Court for the District of Colorado.

**A.   Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. *Stevens v.*

---

[2]   Grossman is the president of two other Minnesota corporations, Heather Apartments Corporation, which is the general partner of Heather Apartments Limited Partnership (Heather Apartments), and Tara Woods Corporation, which is the general partner of Tara Woods Limited Partnership (Tara Woods). Heather Apartments owns Vintage Lakes Apartments in Oklahoma and Tara Woods owns Stone Creek Village in Colorado. OMNI entered into contracts to manage these apartment complexes. The contract governing the management of the Vintage Lake Apartments is subject to a related lawsuit before this Court, *Heather Apartments, Ltd. Partnership v. OMNI Properties, Inc.*, Civ. No. 04-4532 (D. Minn. filed October 19, 2004). Tara Woods initiated a lawsuit against OMNI in the United States District Court for the District of Colorado regarding the management of Stone Creek Village.

*Redwing*, 146 F.3d 538, 543 (8th Cir. 1998); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994). To decide whether the plaintiff has made the requisite showing, a court must view the evidence in the light most favorable to the plaintiff. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The court must determine whether the exercise of personal jurisdiction over the defendant complies with the state long-arm statute and, if so, whether it comports with due process. *Stevens*, 146 F.3d at 543; *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1384 (8th Cir. 1996). Minnesota's long-arm statute, Minn. Stat. § 543.19 (2004), extends jurisdiction over defendants to the extent allowed by due process. *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991); *In re Minn. Asbestos Litig.*, 552 N.W.2d 242, 246 (Minn. 1996). The Court therefore need only consider whether the requirements of due process are satisfied to resolve the jurisdictional challenges. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant's contacts with the state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Unilateral activity by one who claims a relationship with the defendant does not satisfy the minimum contacts requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Instead, the defendant must act so as to "purposefully avail[] itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

Five factors determine whether the exercise of personal jurisdiction over a defendant comports with due process. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Id*. The last two factors are secondary. *Soo Line R.R.*, 950 F.2d at 529.

The third factor distinguishes general jurisdiction from specific jurisdiction. *Burlington Indus.*, 97 F.3d at 1102. The defendant's maintenance of continuous and systematic contacts with a state may subject it to the state's general jurisdiction, that is, the state may assert personal jurisdiction over the defendant in a suit regardless of where the cause of action arose. *See Wessels*, 65 F.3d at 1432 n.4. Specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in a suit that arises out of or relates to the defendant's contacts with the state. *See id*. In this case, Northwest Territory argues that the Court has both specific and general jurisdiction over OMNI and Gulley.

*1. OMNI*

Defendants assert that the Court lacks personal jurisdiction over OMNI because the nature and quantity of its contacts with Minnesota fall short of the level necessary to comport with due process. Defendants claim that the provisions of the Management Agreement were negotiated, drafted, and executed in Colorado. Defendants further assert OMNI does not own property in Minnesota, is not licensed to do business in Minnesota, and does not maintain employees, offices, assets, a telephone listing, or a mailing address in Minnesota. In addition,

4

Defendants claim that OMNI has never contracted to provide goods or services in Minnesota. Defendants acknowledge, however, that throughout the course of OMNI's business relationship with Northwest Territory and Grossman's other Minnesota businesses, OMNI employees have contacted Northwest Territory in Minnesota via e-mail, facsimile, and telephone, and traveled to Minnesota to visit Northwest Territory. Defendants argue that these contacts are too insignificant to subject OMNI to the Court's jurisdiction.

Northwest Territory responds that OMNI has purposefully directed its activities to Minnesota by cultivating and maintaining a management contract that required regular, substantive contacts with Northwest Territory in Minnesota. Northwest Territory asserts that the Management Agreement created complex and long-standing obligations between the parties and that OMNI was continuously in contact with Northwest Territory.

Northwest Territory has established the existence of certain contacts between OMNI and Minnesota, particularly contacts made during the course of OMNI's business relationship with Northwest Territory and Grossman's other Minnesota businesses. In 1998, OMNI began managing a property owned by Tara Woods. On April 26, 2000, OMNI entered into the Management Agreement. Two days later, OMNI entered into a management contract with Heather Apartments. While largely negotiated in Colorado and performed in Colorado and Oklahoma, Northwest Territory has submitted evidence that the Management Agreement contemplated significant interaction between OMNI and Northwest Territory in Minnesota. According to Grossman's affidavit, under the Management Agreement, OMNI was obligated to make monthly financial reports to Northwest Territory and obtain written permission from Northwest Territory to make certain expenditures, investments, and structural changes. In addition, Northwest Territory had to consent to certain personnel changes made by OMNI for

employees assigned to the Property. Northwest Territory also asserts through affidavit testimony that OMNI employees initiated and otherwise had frequent contact with Northwest Territory's Minnesota offices, sometimes on a near daily basis. For example, OMNI contacted Northwest Territory in Minnesota to address a variety of financial issues and to make reports to Northwest Territory. Northwest Territory has submitted sample communications between OMNI in Colorado and Northwest Territory in Minnesota addressing cash flow projections, the status of accounts payable, telephone conferences for financial reviews, deadlines to present budgets to Minnesota, financial statements, payments to vendors, insurance, and utility payments.

As to the first factor, Defendants argue that OMNI's contacts lack the quality and nature necessary to comport with due process. Specifically, Defendants assert that nothing about the formation, performance, or termination of the business relationship governed by the Management Agreement bore a nexus with Minnesota. Moreover, Defendants assert that OMNI is not subject to personal jurisdiction because it merely entered into a contract with Northwest Territory. The Court acknowledges that significant day-to-day interaction and activity related to OMNI's performance under the Management Agreement occurred in Colorado and Oklahoma.[3] Northwest Territory, however, has submitted evidence that OMNI's relationship with Northwest Territory was far more involved than Defendants suggest. Northwest Territory has demonstrated that certain obligations under the Management Agreement required direct and substantive contacts with Minnesota.[4] Moreover, while Forrette instigated OMNI's first contact on behalf of

---

[3] OMNI has demonstrated it performed many of its management services from its offices in Colorado. OMNI has also demonstrated that Nick Forrette, a Minnesota resident, was regularly involved in conducting business on behalf of the limited partnerships and was part of many individual day-to-day contacts with OMNI. Moreover, the Property was located in Oklahoma.

[4] Thus, this case is distinguishable from many of the cases cited by Defendants, wherein contacts made by a non-resident buyer pursuant to sales contract were deemed insufficient to

6

Tara Woods, Northwest Territory asserts that OMNI actively pursued the business relationship with Northwest Territory. Northwest Territory claims that as its relationship progressed with Tara Woods, OMNI sought to expand its number of management contracts with Grossman's businesses, including Northwest Territory and Heather Apartments. Thus, it is reasonable to infer that OMNI was cultivating a long-term relationship with Northwest Territory. Viewing the record in the light most favorable to Northwest Territory, the formation and execution of the Management Agreement bore a nexus to Minnesota, requiring OMNI to have regular and significant contact with Northwest Territory in Minnesota. These contacts were not random, fortuitous, or attenuated. Instead, they evidence a continuous and systematic business relationship between OMNI and Northwest Territory. Accordingly, the nature and quality of OMNI's contacts with Minnesota favor the exercise of personal jurisdiction over OMNI. *See, e.g.*, *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 592 (8th Cir. 2001) (personal jurisdiction exists over non-resident whose contract with resident contemplated an ongoing relationship requiring regular communication); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388-89 (8th Cir. 1995) (jurisdiction exists over non-resident defendant who, among other things, endeavored to foster continuation of a business relationship with resident).

As to the second factor, Defendants argue that OMNI lacks the quantity of contacts to allow for the proper exercise of personal jurisdiction. Northwest Territory has submitted evidence that OMNI had numerous contacts with Minnesota relating to the Management

---

support personal jurisdiction. The Eighth Circuit Court of Appeals has recognized that non-resident sellers who ship goods to the forum state are more likely to have minimum contacts than are non-resident buyers of goods. *See Precious Constr. Co v. J.A. Slatterly Co.*, 765 F.2d 114, 118 (8th Cir. 1985). Here, OMNI is a non-resident "seller" of management services that required contact with the forum state.

Agreement. For example, Gulley and another representative of OMNI visited Minnesota in November 2002, when they met with Grossman and others to discuss the management of the Property. In addition, as discussed above, OMNI representatives, including but not limited to Gulley, had regular contact with Northwest Territory in Minnesota. Thus, the quantity of OMNI's contacts with Minnesota also favors the exercise of jurisdiction.

Turning to the connection between the cause of action and OMNI's contacts with Minnesota, Defendants argue that there is no substantial connection between the alleged causes of action and OMNI's contacts with Minnesota. Northwest Territory, however, has submitted evidence that OMNI's contacts were related to the Management Agreement, under which Northwest Territory has brought its claims. As discussed above, OMNI's contacts included numerous communications required under the Management Agreement, such as communications addressing financial reports and budgets. In its Complaint, Northwest Territory alleges OMNI breached the Management Agreement and was negligent, in part, by failing to provide Northwest Territory with an accurate accounting of receipts and expenditures. Northwest Territory also asserts OMNI breached its fiduciary duty by failing to handle and manage Northwest Territory's funds and property prudently and in good faith. Viewing the record in the light most favorable to Northwest Territory, these claims are related to the performance of the Management Agreement and, therefore, OMNI's contacts with Northwest Territory in Minnesota. *See, e.g.*, *Northrup*, 51 F.3d at 1388 (finding contacts that were an essential part of the course of dealing between the parties that resulted in a purchase of seeds, the non-payment for which became the basis for the lawsuit, satisfied due process).

The fourth factor also supports the exercise of personal jurisdiction over OMNI. Minnesota has an interest in providing a forum to one of its residents, Northwest Territory, to litigate claims against non-residents. *See Northrup*, 51 F.3d at 1389.

Finally, the fifth factor does not strongly favor either party. OMNI is a Colorado corporation. However, Northwest Territory is a Minnesota limited partnership.

Given the nature, quality, and quantity of OMNI's contacts with Minnesota, and the relationship of these contacts to Northwest Territory's cause of action, the Court concludes that Northwest Territory has made a prima facie showing that OMNI's contacts with Minnesota support the exercise of specific jurisdiction over it. Accordingly, the Court denies Defendants' motion insofar as Defendants assert that the Court lacks personal jurisdiction over OMNI.

   2.   *Gulley*

The arguments raised in connection with Gulley's jurisdictional challenge are similar to those raised by OMNI. A corporate officer's "contacts with a forum state are not to be judged according to the corporation's activities there; rather, each defendant's contacts with the forum state must be assessed individually." *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996), *aff'd*, 130 F.3d 1305 (8th Cir. 1997). Thus, resolution of Gulley's jurisdictional challenge turns on whether his activities are sufficient to subject him to the Court's personal jurisdiction.

Gulley executed the Management Agreement on OMNI's behalf with Northwest Territory, a Minnesota limited partnership. At the time of execution, Gulley knew that Northwest Territory was a Minnesota business and its president a Minnesota resident. In his affidavit, Gulley acknowledges that he visited Minnesota in November 2002, when he and another OMNI employee met with Grossman and Forrette to discuss the budget for the three

properties managed by OMNI, including the Property. Gulley further acknowledges that he had telephone contact with Grossman approximately four to five times per year. Northwest Territory has submitted evidence that Gulley or others at OMNI sent regular written reports to Grossman regarding the financial performance of the Property and other management issues. Northwest Territory has also submitted evidence that Gulley was heavily involved in the performance of the Management Agreement and was part of communications concerning issues such as cash flow projections, the status of accounts payable, financial statements, budgets, payments to vendors, insurance, and utility payments. Thus, the record reveals that Gulley had contact with Minnesota.

As to the first two factors, the Court concludes that Gulley's contacts were both numerous and substantive in nature. As the owner of OMNI and a broker who set up the deals between OMNI and Grossman's Minnesota businesses, he participated in telephone calls with, was copied on substantive e-mails to, regularly delivered financial reports to, and attended a meeting with Northwest Territory in Minnesota. These contacts were directly related to OMNI's performance of the Management Agreement. Under these circumstances, the Court concludes that the nature and quality of Gulley's contacts with Minnesota support the Court's exercise of personal jurisdiction over him. These contacts were also sufficiently numerous to favor the exercise of jurisdiction.

Turning to the third factor, Gulley's contacts with Minnesota, like those of OMNI, are related to Northwest Territory's cause of action. Northwest Territory has submitted evidence that Gulley's contacts were related to the Management Agreement, under which Northwest Territory has brought its claims. Because much of the performance of the Management Agreement required regular contact with Northwest Territory in Minnesota, its claims relating to

Defendants' alleged mismanagement are related to Gulley's contacts. *See, e.g.*, *Northrup*, 51 F.3d at 1388.

The same conclusion reached with respect to the Court's analysis of personal jurisdiction over OMNI is warranted with respect to the fourth and fifth factors. Having considered whether Gulley had contact with Minnesota and whether the exercise of jurisdiction over him based on his contacts comports with due process, the Court concludes that Northwest Territory has made a prima facie showing that Gulley subjected himself to the Court's specific jurisdiction. Accordingly, the Court denies Defendants' motion insofar as they assert that the Court lacks personal jurisdiction over Gulley.

**B.**     **Improper Venue**

An action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2000). To determine whether venue is proper, a court does not ask which district among potential forums is the best venue. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003); *Setco Enters., Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). Instead, a court asks whether the district selected by the plaintiff had a substantial connection to the claim, without regard to whether other forums had greater contacts. *Pecoraro*, 340 F.3d at 562; *Setco Enters.*, 19 F.3d at 1281.

Defendants argue that none of the events or omissions giving rise to Northwest Territory's claims occurred in Minnesota, but rather occurred in either Colorado or Oklahoma. While Colorado's connection to the Defendants is much stronger, the Court finds, based on the above discussion of minimum contacts, that Minnesota has a substantial connection to the claims

asserted by Northwest Territory such that venue is proper here. Accordingly, the Court denies Defendants' motion to dismiss insofar as Defendants assert that venue is improper.

**C.    Transfer Venue**

Defendants move in the alternative to transfer the action to the District of Colorado. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). The party seeking a transfer ordinarily bears the burden of establishing that a transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997); *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp.2d 1117, 1121 (D. Minn. 1999). In analyzing a motion to transfer pursuant to section 1404(a), the Court considers the convenience of the parties, the convenience of the witnesses, the interest of justice, and any other relevant factor. *Terra Int'l*, 119 F.3d at 696.

As noted above, some level of inconvenience to the parties is inevitable in this case. OMNI is a Colorado corporation and Gulley is a Colorado resident. Northwest Territory is a Minnesota limited partnership. Under these circumstances, a transfer of this case to Colorado would seem to simply transfer the inconvenience to Northwest Territory. Ordinarily, a plaintiff's choice of forum, particularly if that forum is plaintiff's state of residence, is granted deference, but that deference is of "reduced value" when the operative facts giving rise to the claim occur outside the forum state. *See GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Fin. Servs.*, Civ. No. 02-1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (citing *Moore's Federal Practice* § 111.13[1][c]). "[A] motion to transfer to the district in which the events occurred is likely to succeed." *Id.* (citations omitted). Here, even though Minnesota has a substantial connection to Northwest Territory's claims, the operative events constituting the

alleged mismanagement of the Property largely took place in Colorado or Oklahoma. The Court will therefore afford Northwest Territory's choice of forum little deference. *See id*. In addition, OMNI's principal place of business is in Colorado, its officers are in Colorado, and the employees of OMNI are located in Colorado and Oklahoma. Moreover, Nick Forrette, Northwest Territory's agent who was most actively involved in OMNI's management activities, lives in Colorado. Therefore, the Court concludes that the net inconveniences to the parties will be less if transferred to Colorado. *See, e.g.*, *Graff*, 33 F. Supp.2d at 1121. Accordingly, this factor weighs in favor of transfer.

The convenience of the witnesses is an important factor in the transfer analysis. *Graff*, 33 F. Supp.2d at 1121. Considerations relevant to this factor include the number of essential nonparty witnesses, the location of witnesses, and the preference for live testimony. *Id*. This factor is not a contest between the parties as to which one presents a longer list of witnesses located in the potential districts. *Id*. at 1121-22. The court must examine the materiality and importance of the anticipated witnesses' testimony and determine whether the forum is convenient for them. *Id*. at 1122.

Defendants assert that the witnesses for both parties are located primarily in Colorado and Oklahoma. According to Defendants, the employees of OMNI, who are located in Colorado and Oklahoma, will be the witnesses providing information about the operations of OMNI to refute Northwest Territory's allegations of mismanagement. Of the individuals that the parties identified as having discoverable information in this action, six reside in Colorado, three reside in Oklahoma, one resides in Florida, one resides in Texas, one resides in Minnesota, and one's residence is unknown. The Court notes that Forrette, one of Northwest Territory's witnesses,

13

played a key role in the negotiation and execution of the Management Agreement.[5] In addition, Defendants have submitted evidence that Forrette had managerial authority for Northwest Territory and was OMNI's primary contact. On this record, the Court concludes that most essential witnesses, including Gulley and Forrette, are located in or near Colorado. The only Minnesota witness, Andrew Grossman, is a party and therefore the Court's subpoena power is not relevant. Accordingly, the convenience of the witnesses weighs in favor of transfer to the District of Colorado.

The Court also evaluates what venue will best promote the interests of justice. *See Graff*, 33 F. Supp.2d at 1122. Among the factors a court may consider in determining whether the interest of justice favors transfer are a plaintiff's choice of forum, the relative ability of the parties to bear the expense of litigating in a distant forum, judicial economy, the obstacles to a fair trial, and the advantages of having a local court determine issues of local law. *Terra Int'l*, 119 F.3d at 696; *Graff*, 33 F. Supp. 2d at 1122. As discussed above, the Court will afford Northwest Territory's choice of forum little deference. Because the operative events leading to this lawsuit occurred largely in Colorado, transferring this action to Colorado will serve the interests of justice.

The Court finds that the convenience of the parties, the convenience of the witnesses, and the interests of justice weigh in favor of transfer. Although the Court has personal jurisdiction over Defendants in this action, the case is far more closely connected to the state of Colorado than to Minnesota. Accordingly, the Court grants Defendants' motion to transfer.

---

[5] Even though Northwest Territory listed him as a Minnesota witness, there is no dispute that Forrette lives in Colorado.

### III. ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss or in the Alternative Motion for Transfer [Docket No. 13] is GRANTED IN PART and DENIED IN PART.

2. The Clerk of Court shall transfer this case to the United States District Court for the District of Colorado.

Dated: November 22, 2005

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
